IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENWOOD DIVISION

| | |
|---|---|
| John F. Wanning and Margaret B. Wanning, ) ) ) Plaintiff, ) ) v. ) ) ) Duke Energy Carolinas, LLC, ) ) Defendant. ) _____ | C/A No. 8:13-839-TMC  **OPINION & ORDER** |

This matter is before the Court on a Motion to Dismiss, or alternatively to Stay, filed by Defendant Duke Energy Carolinas, LLC ("Duke"). (ECF No. 4). Plaintiffs John F. Wanning and Margaret B. Wanning ("Plaintiffs") filed a response opposing the motion and Duke filed a reply. (ECF Nos. 13 and 14). A hearing was held on the matter on May 22, 2013, and the court took the motion under advisement. For the reasons set forth below, the court grants the alternative relief sought by Duke in its Motion to Dismiss and stays the action pending review by the administrative agency.

**Background/Procedural History**

In 1965, Duke Power Company, a predecessor of Duke, offered to buy an electric system owned by Greenwood County which provided electric service to approximately 9,000 customers. Because Greenwood County did not possess the authority to sell the property, the South Carolina General Assembly enacted Act 1293 of 1966. This Act authorized the sale if a majority of Greenwood County voters approved it in a referendum. Additionally, the Act provided that "[t]he rates to be charged for electric power for all connections which exist at the consummation of the sale shall be the lower of the rates charged by the Greenwood County Electric Power Commission and Duke Power

Company."[1]

On September 19, 2011, Plaintiffs entered into a contract to buy a house located at 1213 Old Abbeville Highway, Greenwood, South Carolina ("the Property"). (Compl. ¶ 4). Prior to entering into the contract, Plaintiffs' real estate agent inquired with Duke as to whether the Property was covered under the old Greenwood County Electric Rate. (Compl. ¶¶ 8 & 9). Barbara G. Yarbrough, Duke's Rates Director, responded confirming that the residence "is currently served on the old Greenwood County Electric Rate." (Compl. ¶10 Ex. A). After purchasing the Property, Duke has not been charging Plaintiffs' the old Greenwood rate. (Compl. ¶ 12). Plaintiff contends that they relied upon Duke's statement in making a decision to buy the Property, and as a result of being charged the higher rate, they incurred a diminution of market value of the Property and higher electrical bills. (Compl. ¶ ¶ 11, 30).

Plaintiffs brought this action alleging six causes: negligent misrepresentation, breach of contract, breach of implied covenant of good faith and fair dealing, violation of the South Carolina Unfair Trade Practices Act ("UTPA"), S.C. Code Ann. § 39-5-10, equitable estoppel and promissory estoppel. (Comp. ¶¶ 14-56).

## Applicable Law

When considering a motion to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P., the court must accept as true the facts alleged in the complaint and view them in a light most favorable to the plaintiff. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir.1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, –––, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*quoting Bell Atlantic Corp. v.*

---

[1] A change in the either the character of the connection or use of the premises constitutes a new connection effectuating a transfer to Duke rates. *Payne v. Duke Power Co.*, 405 S.E.2d 399, 401-02 (S.C. 1991).

2

*Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.' " *Iqbal,* 129 S.Ct. at 1949 (*quoting Twombly*, 550 U.S. at 557).

## Discussion

Plaintiffs contend that, after making reasonable demands, Duke has refused to comply with its representation that it will provide electrical services to the Property based on the old Greenwood County Electric Rate causing Plaintiffs to be damaged. (Compl. ¶ 13). Duke filed this motion to dismiss, or alternatively to stay, arguing that the matters are within the primary jurisdiction of the Public Service Commission ("PSC") and Plaintiffs must first exhaust their administrative remedies through the PSC. Plaintiffs contend that the PSC does not have jurisdiction over any issues related to Act 1293 and the old Geenwood County Electric Rate.

The court must first determine whether the PSC has the authority to hear this matter. Pursuant to S.C. Code Ann. § 58-27-140, the PSC may:

> (1) ascertain and fix just and reasonable standards, classifications, regulations, practices, or service to be furnished, imposed, observed, and followed by any or all electrical utilities;
>
> (2) ascertain and fix by regulation adequate and reasonable standards for the measurement of quality, quantity, initial voltage, or other condition pertaining to the supply of the product, commodity, or service furnished or rendered by any or all electrical utilities;
>
> (3) prescribe reasonable regulations for the examination and testing of such product, commodity, or service and for the measurement thereof; and

> (4) establish or approve reasonable rules, regulations, specifications, and standards to secure the accuracy of all meters and appliances for measurement.

S.C. Code Ann. § 58-27-140. Further, S.C. Code Ann.§ 58-27-850 provides:

> Whenever the commission after a hearing finds that the existing rates in effect and collected by any electrical utility for any service, product, or commodity are unjust, unreasonable, insufficient, unreasonably discriminatory, or in any way in violation of any provision of law, the commission shall determine the just, reasonable, and sufficient rates to be thereafter observed and in force and shall fix the rates by its order.

S.C. Code Ann. § 58-27-850.

Notwithstanding these statutory provisions, Plaintiffs contends that in *Duke Power Co. v. South Carolina Pub. Serv. Comm'n*, 326 S.E.2d 395, 399 (S.C. 1985), the South Carolina Supreme Court held that Act 1293 deprived the PSC of jurisdiction to determine all matters related to the old Greenwood County Electric Rate. Duke disagrees and argues that the Court held Act 1293 deprives the PSC jurisdiction only in three very specific circumstances - none of which are applicable here.

In *Duke Power*, the court held:

> [T]he legislature has power to regulate utility rates. It has delegated certain authority to the PSC, but the General Assembly can withdraw PSC authority by subsequent acts. Act 1293 deprived the Commission of jurisdiction to set the original rates, to disturb the sale terms set by the General Assembly, or to determine that the rate differential resulted in unjust discrimination.

*Duke Power Co.*, 326 S.E.2d at 399. The court specifically held that "Act 1293, the special legislation relating to the transaction, overrides Code § 58-27-8980 and deprives the PSC of jurisdiction to modify the contract." 326 S.E.2d at 406.[2] Subsequently, in *Payne v. Duke Power Co.*, 405 S.E.2d 399 (S.C. 1991), the South Carolina Supreme Court held: "Although in *Duke Power v. Public Service Commission*, *supra*, this Court held that Act 1293 divested PSC of jurisdiction to raise the old Greenwood rates, PSC is not prohibited

---

[2]Justice Gregory dissented and stated he would hold the PSC had jurisdiction to inquire and determine the fairness of the differing rates. 326 S.E.2d at 407.

from exercising its regulatory authority in a manner consistent with the Act." *Payne,* 405 S.E.2d at 401, n. 6.

As Duke argues, the South Carolina Supreme Court in *Duke Power* held that Act 1293 deprived the Commission of jurisdiction in regard to only three very specific things: 1) setting the original rates; 2) disturbing the sale terms set by the General Assembly; and 3) determining if the rate differential resulted in unjust discrimination. Duke Power 326 S.E.2d at 399. Further, the South Carolina Supreme Court in *Payne* specifically stated that the PSC is divested of jurisdiction to raise the old Greenwood rates and is not prohibited from exercising its authority if it is consistent with Act 1293. *Payne,* 405 S.E.2d at 401, n. 6. Certainly this cannot be read as divesting the PCS of all authority in regard to the old Greenwood rates. Determining the correct rate to be applied to a specific property is not, without more, an exercise of authority inconsistent with the Act. Accordingly, the court finds that the PSC has the jurisdiction to determine whether the old Greenwood rates are applicable to Plaintiffs' property.

The question then is whether some or all of the claims should be stayed under the doctrine of primary jurisdiction. Duke contends that the court should stay the first cause of action and dismiss the remaining causes of action, or alternatively stay all the causes of action pending review by the PSC of the proper rate applicable to the Property.

The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, promotes proper relationships between the courts and administrative agencies charged with particular regulatory duties. The Supreme Court has distinguished exhaustion of administrative remedies and primary jurisdiction and clarified that primary jurisdiction applies where a claim is originally cognizable in the courts, and comes into play when enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an

5

administrative body. *Reiter v. Cooper*, 507 U.S. 258, 268 (1993).

"[I]n every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 64 (1956); *Advamtel, L.L.C. v. Sprint Commc'ns Co. L.P.*, 125 F.Supp.2d 800, 804 (D.Va. 2001). While there is no fixed formula for determining whether to apply primary jurisdiction, generally courts have considered four factors. *See State ex. Rel. Bell Atlantic-West Virginia, Inc. v. Ranson,* 497 S.E.2d 755, 764 (W.Va. 1997). First, whether the issue is within the conventional experience of the judiciary. Second, whether the disposition of the issue is dependant on a subject matter that requires the agency's specialized expertise. Third, whether there is a danger of inconsistent rulings between the agency and the court. Lastly, the court looks to whether a prior application to the agency has been made. *Id*. at 764.

Pursuant to primary jurisdiction, the case may be dismissed without prejudice or stayed pending referral of such issues to the administrative body for its views. *Western P.R. Co.*, 352 U.S. at 63-64.[3] The court has discretion either to retain jurisdiction or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice. *See Carnation Co. v. Pacific Westbound Conference*, 383 U.S. 213, 222-223 (1966). A stay is not a disposition of the case, but a delay so that the case, when returned to the court, will be in better form for a final decision. "[T]he Court neither passes off final decision [onto] another tribunal nor escapes from its ultimate duty to decide. For after the exercise of primary jurisdiction determination by the agency concerned, the case comes back in a

---

[3]"Referral" has been loosely described as a process whereby a court refers an issue to an agency. *See, e.g.*, 28 U.S.C. § 1336. In *Mitchell Coal & Coke Co. v. Pennsylvania R. Co.*, 230 U.S. 247 (1913), the Court set out the actual procedure contemplated, holding the district court should stay the action giving the plaintiff a reasonable opportunity within which to apply to the agency for a ruling. *Id.* at 267.

6

suitable way for the Court, as a Court, to act." *Usery v. Tamiami Trail Tours, Inc.*, 531 F.2d 224, 241 (5th Cir. 1976).

The issue of which rate is applicable to the Property involved in this action appears to be in the category of issues involving specialized expertise from the PSC. Further, at least five of the six claims raised by the Plaintiffs in this action are too intertwined with such a determination to allow the remaining claim, the negligent misrepresentation claim, to move forward. It is only through a stay of the entire action that a consistent, uniform result is assured. *See Advamtel, L.L.C.*, 125 F.Supp.2d at 805. The determination of the PSC of the proper rate applicable to the Property will relate to many of the issues in this case and it is in the best interest of all parties to stay the entire case to await such a determination by the PSC.

## Conclusion

For the foregoing reasons, Defendant Duke's Motion to Dismiss (ECF No. 4) is **DENIED,** but its alternative Motion to Stay (ECF No. 4) is **GRANTED.** This case is stayed giving Plaintiffs a reasonable opportunity within which to apply to the PSC for a ruling as to the appropriate rate applicable to the Property. The parties are to file a status report with the court by December 2, 2013.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

Anderson, South Carolina
June 5, 2013